# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**EDDIE BRILEY**                                                                           **PLAINTIFF**

v.                            No: 5:18-cv-00208 BRW-PSH

**EDWARD ADAMS,** *et al.*                                       **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Eddie Briley ("Briley") commenced this case by filing a complaint pursuant to 42 U.S.C. § 1983 on August 16, 2018, while incarcerated at the Arkansas Division of Correction's Delta Regional Unit (Doc. No. 1). He has since been

released. *See* Doc. No. 50. Briley sues Sheriff Gerald Roberson,[1] Captain Edward Adams, Major Tara Tyler, Lieutenant Cynthia Hunter, Judy Browley, Deputy Tammy Johnson, Deputy David Cherry, Deputy Tracy Taylor, Deputy Veronica Alexander, Deputy Stoney Shaw, Deputy James McClinton, Chief Deputy Greg Bolin, Nurse Christine Turntine, and Nurse Denise Canada-Johnson (the "Defendants") in their official and personal capacities. Doc. No. 1 at 1-2. Briley's claims against defendant Nurse Rose were previously dismissed for lack of service. *See* Doc. No. 56. Briley claims that some Defendants failed to protect him from an attack at the Jefferson County Detention Center on November 29, 2017, and that other Defendants failed to provide him with needed medical care after the attack. Doc. No. 1 at 4-7.

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed material facts filed by the Defendants (Doc. Nos. 87-89). Although Briley was notified of his opportunity to file a response, he did not do so. He also failed to file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. *See* Doc. No. 90. Because Briley failed to controvert the facts set forth in the Defendants' statement of facts, Doc. No. 89, those facts are deemed admitted. *See* Local Rule 56.1(c). Accordingly, the

---

[1] Gerald Robinson served as Jefferson County Sheriff from 2007-2018. *See* https://www.jeffersoncountyar.gov/board_show?id=4

Defendant's Motion for Facts to Be Deemed Admitted (Doc. No. 91) is granted. The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and Defendants are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Facts

On September 27, 2017, Briley filed a grievance asking to be moved out of his cell stating, "Is that my life is in constant danger by being in cell 102. I am in harms way and i fear for my safty . . . I have spoke with numerous officers, including Capt. Adams about this serious concern in which no one have acted."[2] Defendant Browley responded, "what is the problem?" Doc. No. 89-1, *Inmate Grievance #2,182,290*.[3] Later that day, Briley submitted another grievance, stating, "The

---

[2] Grievances and inmate requests are transcribed verbatim without any corrections for misspellings or mistakes.

[3] Chief Deputy Joseph Gorman submitted an affidavit in which he testified that he had reviewed Briley's jail file and determined that the only relevant grievances and

problem is i fear for my safty and wellbeing in f pod around my cellmates who have continued to make attempts on my life. Staff was notified by me on numerous occasions." Browley responded, "Capt. Adams is not here today. You may speak with Cpl. Taylor or wait until Capt. Adams return back to work tomorrow." Doc. No. 89-2, *Inmate Grievance #2,183,749*.

Defendant Captain Edward Adams submitted an affidavit explaining that he is the captain of the Jefferson County Detention Center and held that position during the events complained of in Briley's complaint. Doc. No. 89-3, *Affidavit of Captain Edward Adams,* at ¶¶ 1-2. He testified that he has firsthand knowledge of the events in issue, reviewed all relevant documentation, and was the supervisor of all deputies involved. *Id.*

Adams investigated Briley's complaints but did not find them credible. *Id.* at ¶ 3. Adams explained that it is common for inmates to make requests to be moved because they want to be housed with their friends, and the jail cannot accommodate every request to be moved. *Id.* at ¶ 4. Adams found that Briley had no history with the inmates in his pod and determined that he was not in danger. *Id.* at ¶ 5.

According to Adams, Briley asked Defendant Deputy Tammy Johnson to let Briley out of his cell on September 29, 2017. *Id.* at ¶ 6. Immediately after asking to

---

medical requests had been submitted with Defendants' motion for summary judgment. Doc. No. 89-4.

be removed from his cell, Briley began fighting with three other inmates. *Id*. at ¶ 7. Johnson waited for backup before breaking up the fight because she would not have been able to do so by herself. *Id.* at ¶ 8. Defendants Tracy Taylor, David Cherry, and Stoney Shaw arrived to help. *Id.* at ¶ 9. Taylor deployed OC-Spray around the fight to de-escalate the situation. *Id.* at ¶ 10.

After the fight, Shaw took Briley to the infirmary for medical attention. *Id.* at ¶ 11; Doc. No. 89-5, *Nursing Staff Assessment Record for Eddie Briley dated 9/28/17*.[4] Nurse Cornelia Rose observed that Briley had swelling on his lip but nowhere else. Doc. No. 89-5. She also noted a small amount of dried blood below his nose. *Id.* Rose noted no active bleeding and stated that Briley was cooperative and pleasant. *Id.* She noted that Briley exited the infirmary without a limp and without complaining of discomfort. *Id*.

Briley sought additional medical treatment on October 1, 2017. Doc. No. 89-6, *Inmate Medical Request #2,194,536*. He stated:

> My whole body is continuing to severly hurt, especially my right arm, elbow, sides and back of my head (where lumps can be felt) my left thigh and left ankle and my whole back, upper and lower on up to my shoulders and neck have continue to severly hurt and cause me unusuasal pain and discomfort as result of me being assaulted by 3 detainees who hit and punched me with a lock repeatedly. I need to see the doctor for this pain.

---

[4] It appears that Nurse Rose's record was dated incorrectly. It refers to a detainee who was "jumped by 3 or 4 dudes" and taken to the infirmary by Deputy Shaw. Briley's name is listed at the top of the form. Doc. No. 89-5.

*Id.* In response, Mrs. N. Station informed Briley on October 2, 2017, that he had been added to the doctor's list. *Id.*

Briley submitted a written request to see a doctor again on October 6, 2017.[5] Doc. No. 89-7, *Inmate Medical Request #2,211,924*. In the request, he first stated to disregard his last sick call. He then stated that he had been prescribed Duloxitene for severe shoulder and lower side and back pain due to severe scoliosis. He also stated that he had received additional injuries "since being here" and those injuries caused a good deal of pain and lack of sleep. Finally, Briley asserted that the medication he was taking was not helping, and asked to see the doctor for a Zanaflex prescription. *Id.* RN L. Evans responded "OK" on October 10, 2017. *Id.* According to the statement of undisputed material facts, the visiting doctor saw Briley that day and prescribed medication for his pain. Doc. No. 89 at ¶ 16.

Briley was released from the detention center on November 22, 2017. Doc. No. 89-4 at ¶ 4.

### IV.  Analysis

**A.  *Official Capacity Claims***

Briley sues the Defendants in both their official and individual capacities. Doc. No. 1 at 2. Official capacity claims are "functionally equivalent to a suit against

---

[5] It is unclear whether Briley saw a doctor between October 2, 2017, and before he submitted his October 6 request to see a doctor.

7

the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, the Defendants, as county employees, can only be held liable in their official capacities in this case if Briley can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Briley's lawsuit describes an isolated incident and does not assert that a custom or policy of Jefferson County was the moving force behind the claimed violations of his constitutional rights. Accordingly, Briley's official capacity claims should be dismissed for failure to state a claim upon which relief may be granted.

### B. *Individual Capacity Claims*

The Defendants argue that they are entitled to qualified immunity because Briley cannot establish that they violated his clearly established constitutional rights. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1. **Failure-to-Protect Claims.**

Briley alleges that Defendants Tyler, Hunter, Adams, Alexander, McClinton, Taylor, Browley, Cherry, and Bolin failed to protect him from the September 29, 2017 attack. Defendants argue that Adams, as the detention center's captain, was aware of Briley's concerns for his safety, investigated those concerns, and determined that Briley was not in danger. Doc. No. 88 at 2. Defendants also maintain that it was Adams' responsibility to investigate Briley's claims and move him if his fears were warranted. *Id.* at 2-3.

9

An inmate has a constitutional right to be free from attacks by other inmates. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). The Eighth Circuit Court of Appeals has applied the following standard to pre-trial detainees' failure-to-protect claims:

> The Eighth Amendment requires officials to "provide humane conditions of confinement" by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Schoelch's custodians had a comparable duty to protect Schoelch as a pretrial detainee, although this duty arose under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir.2007). To prove unconstitutional failure to protect from harm, Schoelch must show (1) an "objectively, sufficiently serious" deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation omitted), and (2) that the defendant was deliberately indifferent to the substantial risk of serious harm. *Id.*

*Schoelch v. Mitchell*, 625 F.3d 1041 (8th Cir. 2010). The Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See id.*; *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).

According to Defendant Adams' affidavit, he was made aware of Briley's grievances asking to be moved and claiming that his cellmates had "continued to make attempts on [my] life." He investigated Briley's allegations, found that Briley had no history with "these inmates," and concluded that Briley was not in danger. He also states that Briley had reported no prior incidents with "these inmates" and

10

had not sought medical attention related to the alleged prior attempts on his life. Adams also avers that it was his responsibility to move Briley if warranted, and he subjectively believed that Briley was not at risk in his cell. There is no evidence before the Court that Adams acted with deliberate indifference to a substantial risk of serious harm to Briley. In fact, the evidence establishes that Adams took Briley's complaints seriously and conducted an investigation. These actions do not support a finding of deliberate indifference.

Similarly, there is no evidence before the Court that Defendant Browley acted with deliberate indifference to a substantial risk of serious harm to Briley. Browley was the recipient of Briley's grievance filed on September 27, 2017, in which he complained that his life was in constant danger and he feared for his safety. She responded to the initial complaint that same date and asked what the problem was. Doc. No. 89-1. After Briley responded, Browley notified Briley that Captain Adams was not in that day, but he could speak to Cpl. Taylor or wait for Adams to return to work the following day. Doc. No. 89-2. Browley's responses do not constitute evidence of deliberate indifference. Instead, they show that she was aware of his complaints, and identified two jail personnel Briley could speak with about his concerns.

Briley also claims that ADC Defendants Tyler, Hunter, Alexander, McClinton, Taylor, and Bolin were deliberately indifferent to a substantial risk of

serious injury to him. He alleges that he made verbal complaints about his fears to these defendants but was not moved to a different cell before he was attacked. Doc. No. 1 at 4-5. Briley does not state when he made such complaints or what he said to these defendants. He does not produce evidence of whether or how these defendants responded to his complaints, whether they reported the complaints to Captain Adams, or whether any of them had the authority to move him to another cell. The facts Briley sets forth in his complaint against these defendants are insufficient to state a claim for failure to protect. Additionally, evidence has been provided by the ADC Defendants that Captain Adams was made aware of Briley's concerns for his safety; that it was his responsibility to decide if moving Briley was warranted; that he conducted an investigation; and that he found no evidence of a substantial risk of serious harm to Briley at that time. These undisputed facts do not support a finding that Tyler, Hunter, Alexander, McClinton, Taylor, or Bolin took or failed to take any action that would demonstrate deliberate indifference to a substantial risk of serious harm to Briley.

Briley also alleges that ADC Defendants Cherry and Johnson failed to protect him in violation of his constitutional right to be free of attacks by other inmates. He states that before the attack, he told Deputy Cherry to let him out of his cell while other inmates in the cell were cursing at him. Doc. No. 1 at 4. Cherry spoke with Deputy Johnson, who came to the cell door and asked what the problem was, all

while the inmates in the cell were cursing and hovering. According to Briley, he told Johnson he needed out of the cell and she began to use her radio. While she was doing so, Briley claims, his cellmates attacked him. *Id.* Assuming these allegations are true, they are insufficient to state a viable failure to protect claim against Cherry or Johnson. They establish that some trouble in the cell could be brewing, and Briley asked Cherry and Johnson to open the cell door to let him out. When Briley addressed Cherry, Cherry notified Johnson. When Johnson was notified, she radioed in response, presumably calling for backup. According to Adams, Johnson waited for back-up before breaking up the fight because she could not do so on her own.[6] Both Cherry and Johnson took action as soon as Briley reached out to them and back up was called in. There is no evidence of deliberate indifference. Accordingly, ADC Defendants Cherry and Johnson are entitled to qualified immunity on Briley's failure-to-protect claims.

2. **Medical Treatment Claims.**

Briley's pending medical claims are against Nurses Johnson and Turntine for not providing him with pain medication. Pretrial detainees' claims are evaluated

---

[6] The Eighth Circuit Court of Appeals has held that "unarmed prison officials have no duty as a matter of law to physically intervene in a prison fight which may cause them serious injury or worsen the situation, . . ." *See Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989); *see also Lewis v. Varner Unit*, No. 5:18CV00221-JM-JJV, 2019 WL 3001313, at *4 (E.D. Ark. June 18, 2019), *report and recommendation adopted,* No. 5:18CV00221-JM-JJV, 2019 WL 2998738 (E.D. Ark. July 9, 2019).

under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment. *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care).[7] To succeed with an Eighth Amendment inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

---

[7] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees. 183 F.3d at 905. The Court acknowledged that pretrial detainees' claims may be subject to an objective reasonable test rather than the subjective deliberate indifference standard. *Id.* The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

As described earlier, Briley was initially assessed after the attack on September 29, 2017, by Nurse Rose, who is no longer a defendant in this case. *See* Doc. No. 89-5. Nurse Rose documented that Briley had swelling on his lip, a small amount of dried blood below his nose, and no active bleeding; that Briley was cooperative and pleasant; and that he left the infirmary without a limp and without complaining of discomfort.

Briley asserts in his lawsuit that he complained to Defendants Nurse Johnson and Nurse Turntine about having pain and they did not provide him with any medication. Doc. No. 1 at 6. He does not state when he made these complaints, whether he saw Johnson and Turntine in the infirmary, and if so, when he saw them. He does not state how Johnson and Turntine responded to his requests for pain medication, other than to say they refused to provide any. He does not say if they provided any explanation for their refusal to provide pain medications.

The evidence before the Court documents that after he saw Nurse Rose on September 29, Briley made written requests to see a doctor on October 1 and October 6, 2017. Those requests were responded to by non-parties. Doc. Nos. 89-6 & 89-7. According to the statement of undisputed material facts, the visiting doctor saw Briley on October 6 and prescribed pain medication that day. That same day, Briley complained that the pain medication was not helping and requested a different medication. There is no documentary evidence before the Court that Defendants

15

Nurse Johnson or Nurse Turntine were ever involved in providing medical care to Briley following the September 29, 2017 attack. A defendant may not be held liable under § 1983 unless she was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).

Additionally, assuming the allegations of the complaint are true, they fail to support a finding that Johnson or Turntine was deliberately indifferent to a serious medical need Briley had. At worst, Briley's allegations evidence a disagreement with treatment decisions made by medical staff. Such disagreement, of course, does not establish the existence of a constitutional violation. *See Estate of Rosenberg by Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995). For these reasons, Defendants Johnson and Turntine are entitled to qualified immunity on Briley's medical treatment claims.

### C. *Other Allegations That Do Not Describe a Viable Constitutional Claim.*

Briley includes other allegations in his complaint that do not describe viable constitutional claims and should therefore be dismissed for failure to state a claim upon which relief may be granted, as explained below.[8]

<u>Excessive Use of OC Spray</u>.  Briley complains that Deputies Shaw, Taylor, and Cherry rushed into his cell spraying excessive amounts of OC Spray when they broke up the fight on September 29, 2017.  Doc. No. 1 at 4-5.  "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-539 (1979)).  In *Bell,* the United States Supreme Court explained that "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'"  *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell*, 441 U.S. at 561).  Briley's conclusory statement that the officers used

---

[8] A court may dismiss a case for failure to state a claim *sua sponte*.  See 28 U.S.C. § 1915(e)(2) (court may dismiss an *in forma pauperis* complaint for failure to state a claim at any time); 28 U.S.C. § 1915A (PLRA's provision regarding screening of prisoner complaints); *Smith v. Boyd,* 945 F.2d 1041, 1042–43 (8th Cir. 1991) (district court may properly dismiss § 1983 claim *sua sponte* for failure to state a claim for relief, as long as dismissal does not precede service of process and claims obviously fail on facts alleged). *See also Whitt v. Cradduck*, No. 5:16-CV-05024, 2016 WL 3920420, at *1 (W.D. Ark. July 18, 2016) ("[U]nder the Prison Litigation Reform Act (PLRA), the Court has a continuing duty to dismiss at any time claims that are frivolous or fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2).").

an "excessive" amount of OC Spray to subdue inmates involved in an altercation is insufficient to state a claim that such force was excessive or unrelated to a nonpunitive governmental purpose. Accordingly, to the extent Briley attempts to state a due process claim based on excessive force, he fails to describe sufficient facts to state a claim for relief.

Grievance Procedure. Briley also alleges that Sheriff Roberson and Bolin do not have an adequate grievance procedure in place at the Jefferson County Detention Center. Doc. No. 1 at 6. Inmates do not have a constitutionally protected right to a grievance procedure or to require prison officials to comply with internal rules or procedures.[9] *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). *See also Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

Placement on Lockdown. Finally, Briley complains that he was placed on lockdown by Hunter and Tyler after the September 29, 2017 attack, where he was

---

[9] "'[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'" *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quoting *Azeez v. DeRobertis,* 568 F. Supp. 8, 10 (N.D. Ill. 1982)).

not allowed to communicate with his family or do legal research. Doc. No. 1 at 6-7. He states that he was not found guilty of violating any prison rules. To the extent Briley attempts to raise a due process claim based on his placement in lockdown, he fails. He does not allege that he was placed on lockdown as punishment as opposed to such placement for his own safety. He does not allege that he was not provided notice of any charges and a hearing.[10] Without more, this claim should be dismissed.

## V.  Conclusion

The undersigned recommends that the Defendants' motion for summary judgment (Doc. No. 87) be granted as to Briley's failure-to-protect and medical treatment claims and these claims be dismissed with prejudice. Defendants are entitled to qualified immunity on these claims because the undisputed material facts show there was no constitutional violation. Briley's other claims should be dismissed without prejudice for failure to state a claim upon which relief may be granted.

DATED this 7th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[10] "A pretrial detainee can't be punished for a disciplinary infraction without due process. . . . In the pretrial detainee context, due process includes 'written notice of the charges, a written statement of the evidence relied on and the reasons for the action, and an opportunity to call witnesses and present documentary evidence.' . . . These requirements track those in *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)." *Rupert v. Boyd*, No. 3:17-CV-119-DPM-BD, 2018 WL 1778471, at *1 (E.D. Ark. Apr. 13, 2018) (internal citations omitted).